IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00906-MEH

CATRICE THOMAS, as the surviving biological daughter and surviving heir of the decedent, Martel C. Thomas, and
ESTATE OF MARTEL THOMAS,

Plaintiffs,

v.

MAYOR FOR THE CITY AND COUNTY OF DENVER, COLORADO, in an official capacity,
EXECUTIVE DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY FOR THE CITY AND COUNTY OF DENVER, COLORADO, in an official capacity,
JOHN DOES, employees of the City and County of Denver, Colorado, and
JANE DOES, employees of the City and County of Denver, Colorado,

Defendants.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is a Motion to Dismiss filed by Defendants Mayor and Executive Director of Public Safety for the City and County of Denver ("Defendants") [filed April 30, 2015; docket #12]. The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based on the record herein and for the reasons that follow, the Defendants' motion is **granted**.[1]

**BACKGROUND**

Plaintiffs initiated this lawsuit in Denver County District Court following the death of Catrice Thomas' father, Martel Thomas ("Decedent"), who was allegedly killed by Kenneth Mackey

---

[1]On May 12, 2015, the parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

on November 26, 2013.

## I. Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in her Amended Complaint,[2] which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On November 26, 2013, Kenneth Mackey killed the 65-year-old Decedent. At the time of the killing, Mackey was under a court-ordered "intensive supervision" by Denver Pretrial Services ("DPS"), a division of the Denver Department of Public Safety. DPS has a responsibility to protect the public from persons on intensive supervision. According to Plaintiffs, Mackey was not permitted to be outside of his home, to carry a firearm, or to use illegal substances; however, Mackey did not follow these provisions on November 26, 2013. DPS monitored Mackey through a global positioning system ("GPS") ankle bracelet at the time of the Decedent's death.

The Executive Director is the head of the Denver Department of Public Safety, while the Mayor supervises the Executive Director. Plaintiffs filed a notice of tortious claims with the government on or about April 13, 2014.

## II. Procedural History

Based on these factual allegations, Plaintiffs claim Defendants failed to act or acted below the acceptable standard in supervising Kenneth Mackey. Plaintiffs assert claims against Defendants for (1) wrongful death and survivorship, and (2) a Fourteenth Amendment violation of the Due

[2]An amended complaint supercedes the original complaint and eliminates any legal effect of the original. *Franklin v. Kansas Dept. of Corrs.*, 160 F. App'x 730, 734 (10th Cir. 2005).

Process Clause pursuant to 42 U.S.C. § 1983. First, Plaintiffs allege Defendants and their employees breached a duty to the public for protection from supervised individuals, thereby substantially contributing to the death of Decedent. *See* Amended Complaint at 4-5. Second, Plaintiffs allege Decedent possessed the right to his life under the Due Process Clause, which Defendants deprived because of their action(s) or inaction(s). *Id*. at 6. Plaintiffs request actual damages, economic and non-economic damages, and attorney's fees. *Id.* at 8.

Defendants filed the present motion arguing the state law tort claims should be dismissed pursuant to Rule 12(b)(1) because immunity has not been waived under the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-106 (2013). Defendants also argue the §1983 claims should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs failed to allege a predicate constitutional violation or allege that the violations were the result of any municipal policy, a requirement pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

Plaintiffs counter the waiver of immunity outlined in Colo. Rev. Stat. § 24-10-106(1)(e) applies here, as DPS is a "low cost alternative to jail." In addition, Plaintiffs argue they sufficiently pled their § 1983 claims to the best of their ability and knowledge, but they lack information regarding a municipal policy as Defendants have not provided them with the requested documents. Nevertheless, Plaintiffs attempt to show an existing municipal policy by pointing to the DPS's statutory duty to supervise court-ordered persons. Citing Colo. Rev. Stat. §§ 16-4-105 and 16-4-106, Plaintiffs claim DPS's purpose is to supervise and protect the community. Additionally, Plaintiffs assert the DPS's purpose of protecting the community means that it had a "special relationship" with Decedent because Mackey was a known threat to the community, was on intensive supervision, and was ordered to wear a GPS monitoring bracelet. Therefore, Plaintiffs claim DPS violated its duty by failing to provide adequate supervision. Finally, Plaintiffs attempt

to establish liability under § 1983 by asserting common-law tort claims.

Defendants reply arguing that Plaintiffs' state law claims are barred by CGIA as there is not an enumerated waiver that applies. The waiver identified by the Plaintiffs does not apply because no case law exists suggesting that the waiver extends beyond a jail facility; rather, the waiver applies only to physical conditions of a facility under Colo. Rev. Stat. § 24-10-103(1.3), and an ankle bracelet is not analogous to a jail facility, no matter the cost. Next, Defendants assert Plaintiffs fail to allege facts to establish substantive due process for their § 1983 claim in that they have not alleged any official municipal policy that caused the violation of the right to life. Regarding Plaintiffs' assertion that Defendants have not provided requested information concerning proper parties, Defendants counter that Plaintiffs are not entitled to discovery prior to plausibly pleading their case and that the information requested does not involve a municipal policy or custom. As Plaintiffs have not established a direct casual relationship between a specific municipal policy and the Decedent's death, Defendants assert that there is no municipal liability. Finally, Defendants reject Plaintiffs' "special relationship" theory, as the state must have restrained or hindered Decedent's freedom to act in order to have a "special relationship." Additionally, Defendants argue the Supreme Court held in *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) that the government's failure to protect an individual against a private third party's actions does not constitute a Due Process Clause violation.

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v.*

*INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiffs in this case bear the burden of establishing that the Court has jurisdiction to hear their claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt*, 46 F.3d at 1002.

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Amended Complaint's factual allegations.

## II. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

**ANALYSIS**

Typically, "[w]hen a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). Here, however, Defendants' Rule 12(b)(1) argument is limited to the *state* law claims while

they contend the *federal* claims should be dismissed pursuant to Rule 12(b)(6). The Court will address each argument in turn.

**I. State Law Claims of Wrongful Death and Survival**

Under the CGIA, public entities and their employees are immune from claims which lie or could lie in tort, unless the employee's conduct was willful or wanton or where a waiver of immunity has been established. Colo. Rev. Stat. §§ 24-10-105, 24-10-106. Sovereign immunity issues concern subject matter jurisdiction and are determined in accordance with Rule 12(b)(1). *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000) (en banc) (citing *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997)).

Here, Plaintiffs allege Jane Doe and John Doe have acted willfully or wantonly, but they do not plead facts demonstrating the moving Defendants acted willfully or wantonly in their official capacities, nor do Plaintiffs argue that they have done so. *See* Amended Complaint, ¶¶ 8-14, 17-18. Rather, Plaintiffs contend a waiver of immunity applies in this case pursuant to Colo. Rev. Stat. § 24-10-106(1)(e), which provides in pertinent part, "Sovereign immunity is waived by a public entity in an action for injuries resulting from . . . A dangerous condition of any public hospital, jail, public facility located in any park or recreation area maintained by a public entity."[3] Without legal support, the Plaintiffs argue that DPS is a "low cost alternative to jail" and should be included under this exception. Defendants counter that (1) "pretrial supervision is not jail," and (2) the CGIA defines a "dangerous condition" of a jail to be a physical condition of the facility. The definition of a dangerous condition is:

either a *physical condition* of a facility or the *use thereof* that constitutes an

[3]Plaintiffs also cite to Colo. Rev. Stat. § 24-10-106(2), which is not applicable in this case.

> unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in *constructing or maintaining such facility*...A dangerous condition shall not exist solely because the design of any facility is inadequate.

Colo. Rev. Stat. § 24-10-103(1.3) (emphasis added). Based on the plain language of the statute, a GPS ankle bracelet is not a "facility." Consequently, absent binding or persuasive legal support, the Court declines to extend the waiver provision in § 24-10-106(1)(e) to include GPS ankle bracelets. The Plaintiffs have not argued the application of additional immunity waivers nor that the other waivers identified in § 24-10-106(1) apply.

The Court concludes the Plaintiffs have failed to allege Defendants Mayor and Executive Director acted willfully or wantonly in supervising Mackey, and finds a waiver of sovereign immunity does not apply in this case. Accordingly, the moving Defendants are immune from liability for Plaintiffs' state law claims under the CGIA, and the Court must grant the Defendants' motion to dismiss these claims pursuant to Rule 12(b)(1).

## II. 42 U.S.C. § 1983 Claims

The moving Defendants contend the Plaintiffs have not plausibly pled their claims for official capacity liability under 42 U.S.C. §1983 because they have not sufficiently alleged either an underlying constitutional violation or an official policy that directly caused the claimed constitutional violation.

As set forth above, the Plaintiffs concede that their claims against the moving Defendants in their official capacities are essentially brought against the City and County of Denver. The Supreme Court recognizes that municipalities and other local government units are "persons" to whom Section 1983 applies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55 (1978).

However, local governments can be liable under Section 1983 "only for their *own* illegal

acts." *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359 (2011) (internal quotation and citations omitted) (emphasis in original). Hence, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436 U.S. at 692). Rather, to prove a Section 1983 claim against a municipality, a plaintiff must demonstrate (1) the existence of a municipal policy or custom, which (2) directly caused the injury alleged. *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). A plaintiff "cannot state a claim for relief under § 1983 by pointing to isolated incidents." *Ketchum v. Denver Police Dep't*, 930 F.2d 33, 1991 WL 35212, at *1 (10th Cir. 1991) (citing *Monell*, 436 U.S. at 694).

In establishing the first requirement, a plaintiff may show a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

Here, Plaintiffs argue the municipal policy in question was the Denver Department of Public Safety's policy of training and supervising employees which resulted in inadequate supervision of Mackey, and consequently, the alleged constitutional violation. The standards for pleading a municipal liability claim are strenuous, and those for asserting a viable failure to train claim particularly so. *See Connick*, 131 S. Ct. at 1359 ("A municipality's culpability for a deprivation of

rights is at its most tenuous where a claim turns on a failure to train."). In this context, Plaintiffs must allege facts sufficient to suggest that the failure to train "amounts to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *See id.* (citing *Canton*, 489 U.S. at 388).

Deliberate indifference is established only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* at 1360. For example,

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Id.* Like the plaintiff in *Connick*, the Plaintiffs here do not allege a "pattern" of constitutional violations by untrained employees. Rather, citing *Canton*, Plaintiffs argue "[c]ertain activities are so obviously dangerous that liability for failure to train . . . can be established upon a single occurrence." Response, docket #18 at 10.

In *Connick*, the Supreme Court discussed *Canton*'s opinion regarding "single-incident" liability saying *Canton* "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 131 S. Ct. at 1361. The Court explained that the hypothetical scenario posed in *Canton* demonstrated "an obvious need for specific . . . training." *Id.* ("The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."). But,

citing *Canton*, the Court cautioned, "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability. '[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." *Id.* at 1363-64 (citation omitted).

Here, to demonstrate sufficient pleading for municipal liability, Plaintiffs point to allegations in their Amended Complaint that Department of Public Safety "agents and employees" had "education and training" on and "protocols and procedures" for supervising individuals; that Mackey was prohibited from engaging in certain actions while under the Defendants' supervision; that Mackey "committed other criminal and otherwise unauthorized acts" while under the Defendants' supervision; and that Mackey "committed the homicide of the decedent" while under the Defendants' supervision. Amended Complaint, ¶¶ 37-48. However, these allegations do not demonstrate any omissions in a training program or a failure to train municipal employees that are so "patently obvious" as to hold the City and County of Denver liable for the alleged constitutional violation.

Moreover, "a municipality [cannot] be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights." *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1154 (10th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of [the behavior] is quite beside the point.") (emphasis in original). Defendants Mayor and Executive Director of the Department of Public Safety are, as of yet, the only identified Defendants in this case. "A plaintiff must plead that each Government-official defendant, through the official's own individual actions,

has violated the Constitution." *Iqbal*, 556 U.S. at 678.

Plaintiffs' allegations assert only that Defendants Mayor and Executive Director acted by "supervis[ing] and control[ling]" the Department. However, supervisory status alone does not create § 1983 liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Thus, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green*, 108 F.3d at 1302 (quotation and brackets omitted).

In other words, "Section 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (interpreting *Iqbal* and quoting 42 U.S.C. § 1983). Thus, the Plaintiffs may overcome a Rule 12(b)(6) challenge to their Amended Complaint by alleging: "(1) the [Defendants] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* Here, Plaintiffs' allegations do not meet *Dodds*' requirements. Plaintiffs have failed to allege that Defendants Mayor and Executive Director had personal knowledge of or promulgated, created, implemented or possessed responsibility for the continued operation of any policy that led to the killing of the Decedent. Therefore, any alleged "link" to the actions of Defendants is too far

attenuated to state a valid claim against Defendants pursuant to § 1983.

Consequently, the Court finds Plaintiffs have failed to allege § 1983 claims in the operative Amended Complaint against Defendants Mayor and Executive Director in their official capacities. Plaintiffs argue that they "lack any additional knowledge or independent means to discern any 'municipal policy', custom, or training" due primarily to the Defendants' unwillingness to provide information. Response, docket #18 at 13. According to the Plaintiffs, Mackey's pretrial services information had been kept confidential "to preserve the integrity of the pending criminal prosecution," but Mackey was then convicted on April 8, 2015. *Id.* at 14-15. Plaintiffs claim "the defendants *still* have not disclosed Kenneth Mackey's pretrial services file to plaintiffs, who [are] without independent or alternative means of discerning the information contained therein." *Id.* at 16. Plaintiffs do not elaborate further on their inability to obtain the file or explain why they cannot attempt to obtain the file from the state court now that the trial is over. Notably, Plaintiffs also did not oppose Defendants' motion to stay discovery in *this* case. Thus, the Plaintiffs' asserted "inability" is not altogether persuasive.

Nevertheless, in the pursuit of justice and the truth, the Court will dismiss the Mayor and Executive Director as Defendants, but will permit the Plaintiffs to serve on the Department of Public Safety for the City and County of Denver limited discovery for the sole purpose of determining the identity(ies) of the proper defendant(s) in this case.

Finally, the Court notes that the Defendants seek an award of attorney's fees within the content of their motion to dismiss; however, such request must be made by separate motion. *See* D.C. Colo. LCivR 7.1(d).

**CONCLUSION**

In sum, the Court finds that Plaintiffs have failed to (1) establish a waiver of immunity under

the CGIA for her state law claims, and (2) state plausible claims for violation of the Fourteenth Amendment against Defendants Mayor and Executive Director in their official capacities. Accordingly, based upon the foregoing reasons, the Defendant Mayor and Defendant Executive Director of Public Safety's Motion to Dismiss [filed April 30, 2015; docket #12] is **granted** in that these Defendants are dismissed from the case. However, the Court will permit the Plaintiffs to serve limited discovery (one interrogatory and one request for production of documents) on the Department of Public Safety for the City and County of Denver (through defense counsel currently appearing in the case) on or before August 5, 2015 for the sole purpose of determining the identity(ies) of the proper defendant(s) in this case. The Department shall respond to Plaintiffs' discovery requests on or before September 4, 2015. In addition, the deadline for service pursuant to Fed. R. Civ. P. 4 is extended to September 20, 2015.

ORDERED AND DATED at Denver, Colorado this 29th day of July, 2015.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge