IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00906-MEH

CATRICE THOMAS, as the surviving biological daughter and surviving heir of the decedent,
Martel C. Thomas, and
ESTATE OF MARTEL THOMAS,

      Plaintiffs,

v.

YOLANDA WHITE-GORDON, individually and as a current or former employee or authorized
agent of the City & County of Denver Pretrial Services,

      Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is the Defendant's Motion to Dismiss filed pursuant to Fed. R. Civ. P.
12(b)(1) and 12(b)(6) [filed November 6, 2015; docket #36].  The motion is fully briefed, and the
Court finds that oral argument will not assist in the adjudication of the motion.  Based on the record
herein and for the reasons that follow, the Defendant's motion is granted in part and the remaining
claims remanded to state court.[1]

## BACKGROUND

      Plaintiffs initiated this lawsuit in the District Court for the County of Denver, Colorado
following the death of Catrice Thomas' father, Martel Thomas ("Decedent"), who was allegedly
killed by Kenneth Mackey ("Mackey") on November 26, 2013.

---

[1]On November 25, 2015, the parties consented to this Court's jurisdiction pursuant to 28
U.S.C. § 636(c).  *See* docket #42.

I.      **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiffs in the Second Amended Complaint,[2] which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

Denver Pretrial Services is a governmental agency through the City and County of Denver that provides alternatives to incarceration for those accused of crimes and who are awaiting trial. Denver Pretrial Services, its employees, and its authorized agents use a variety of services including but not limited to: 1) global position monitoring, 2) direct, constant contact and supervision, 3) drug testing, 4) curfews, 4) home inspections for felons, gangs, drugs, and firearm possession, 5) employment and residential verification, 6) background checks, and other services. Denver Pretrial Services contracts with private third-party agents to provide some of these services, including but not limited to 'real time' global positioning monitoring, such as BI, Inc. and its parent company The Geo Group, Inc. Both Denver Pretrial Services and BI, Inc. advertise '24/7' services and capabilities.

Defendant Yolanda White-Gordon, an employee with Denver Pretrial Services, was the primary and designated person responsible for supervising and implementing the terms and

---

[2]An amended complaint supercedes the original complaint and eliminates any legal effect of the original. *Franklin v. Kan. Dep't of Corrs.*, 160 F. App'x 730, 734 (10th Cir. 2005).

[3]Although the Plaintiffs do not expressly invoke Fed. R. Civ. P. 12(d), they assert there exist disputed issues of fact in this case and attach evidence outside the pleading to support their arguments. However, the Court will proceed with analyzing only the relief requested in the motion pursuant to Fed. R. Civ. P. 12(b).

conditions of the court-ordered intensive pretrial supervision of Mackey at all relevant times, including but not limited to curfew, drug use, firearm possession, and GPS monitoring. Intensive supervision is the highest form of supervision by Denver Pretrial Services and incorporates all of the aforementioned services. It is used to monitor and supervise only those individuals who are accused of serious or violent offenses, have significant criminal histories, are considered threats to public or victim safety, or have a high propensity for recidivism.

On November 26, 2013, Mackey killed the Decedent by multiple gunshot wounds. Mackey was subsequently convicted of homicide by a jury on April 8, 2015 in Arapahoe County District Court, case #2013CR2631. At the time of the homicide, Mackey was out on a $100,000 bond and court-ordered pretrial supervision in Denver District Court, case #2013CR2626, for a separate attempted homicide against another alleged victim. Specifically, on May 29, 2013, Denver County Court Judge Claudia Jordan ordered Denver Pretrial Services to monitor and supervise Mackey while on out on bond. Judge Jordan ordered Mackey to be on placed on intensive supervision and required a global positioning satellite (GPS) device be attached to Mackey's person and monitored by Denver Pretrial Services.

Mackey had several prior criminal convictions, which was a fact known to or readily discernable by Denver Pretrial Services, its employees, and agents.

Evidence in Mackey's criminal homicide trial revealed that on November 26, 2013, Mackey 1) was in possession of a handgun, 2) was breaking into the Decedent's home at approximately 1:30 AM; and 3) had the intent to commit a drug, property, assault, and/or financial crime therein. The evidence also showed that in the late evening or early morning hours of November 25-26, 2013, Mackey committed an armed robbery. The times of the November 25th and/or 26th criminal

offenses were during a period when Mackey's departure from his residence was prohibited and, therefore, violated the policies, customs, protocols, procedures, terms, and conditions of curfew in intensive supervision with Denver Pretrial Services.  Mackey's physical movements were both monitored in "real time" and trackable. In fact, police were able to find and arrest Mackey solely based on his GPS bracelet.

Moreover, Mackey violated the terms and conditions of a standard bond by committing, or being allowed the opportunity to commit by Denver Pretrial Services', its employees', and agents' failure to enforce policies, customs, protocols, procedures, terms, and conditions the following violations of his conditions of release:

a.   Possession of a handgun and ammunition: there was no pre-release home inspection of Mackey's known residence nor record check for possession.

b.   The commission of two (2) crimes in two (2) days: the physical, trackable movements of Mackey committing the crime at Subway on November 25-26, 2013 in the late evening or early morning hours provided sufficient notice and opportunity for Denver Pretrial Services to respond, mitigate, and/or take corrective actions, including but not limited to arresting Mackey prior to the homicide on November 26, 2013.

c.   The use, sale, possession, or distribution of illegal narcotics, which was allegedly a motive or relevant factor for Mackey in killing the Decedent: the implementation of regular or random drug testing could have detected any use by Mackey, which would have provided sufficient notice and opportunity for Denver Pretrial Services to respond, mitigate, and/or take corrective actions, including but not limited to arresting Mackey prior to November 26, 2013.

d.   Failure to remain or become gainfully employed, which was allegedly a motive or relevant factor for Mackey in killing the Decedent.

e.   Lack of direct and constant supervision by Denver Pretrial Services with Mackey, sometimes spanning weeks or months between check-ins.

Defendant was the primary and designated person responsible for supervising and implementing the terms and conditions of the court-ordered intensive pretrial supervision of Mackey

4

at all relevant times, including but not limited to curfew, drug use, firearm possession, and GPS monitoring.  She had education and training on monitoring and supervising individuals on intensive supervision, like Mackey, and was charged with enforcing the court-ordered terms and conditions, as well as policies, customs, protocols, and procedures for monitoring and supervising individuals on intensive supervision.  Defendant was responsible for protecting, or acting in a reasonable and prudent manner to mitigate the risk of danger and harm to, the general public, of which the Decedent was a member when he was killed.

Plaintiffs filed a notice of tortious claims with the government on or about April 13, 2014.

## II.   Procedural History

Based on these factual allegations, Plaintiffs claim Defendant failed to act or acted below the acceptable standard in supervising Mackey.  Plaintiffs assert claims against Defendant for (1) wrongful death and survivorship, and (2) a Fourteenth Amendment violation of the Due Process Clause pursuant to 42 U.S.C. § 1983.  First, Plaintiffs allege Defendant breached a duty to the public for protection from supervised individuals, thereby proximately causing or substantially contributing to the death of Decedent.  *See* Amended Complaint at 9-10.  Second, Plaintiffs allege Decedent possessed the right to his life under the Due Process Clause, which Defendants deprived because of their action(s) or inaction(s).  *Id.*  Plaintiffs request actual damages, economic and non-economic damages, and attorney's fees.  *Id.* at 8.

Defendant filed the present motion arguing she is entitled to qualified immunity on the due process claim because Plaintiffs fail to allege a clearly established constitutional violation.  In addition, Defendant contends the state law tort claims should be dismissed pursuant to  Rule 12(b)(1) because Plaintiff's allegations of willful and wanton conduct do not satisfy the heightened

pleading standard for waiving immunity under the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24-10-106 (2013). Alternatively, Defendant asserts the state law claims should be dismissed because she was not named as a Defendant within the applicable statute of limitations.

Plaintiffs counter that the motion should be denied because Defendant does not have sovereign immunity under Colorado law for willful and wanton acts or omissions causing injury pursuant to Colo. Rev. Stat. § 24-10-118(1); Plaintiffs' Second Amended Complaint sufficiently pleads willful and wanton conduct – especially where discovery has been stayed over objection; Colorado law imposes statutory duties upon pretrial supervision employees pursuant to Colo. Rev. Stat. §§ 16-4-105(8), 106; notwithstanding State statutory duties, a goal of pretrial supervision and its employees is to protect the public, therefore assuming an important, inherently dangerous duty; the Plaintiffs' § 1983 action arises out of common law and state tort claims; the Defendant was the only person responsible for upholding the statutory duties and had a special relationship with Mackey; and Plaintiffs timely complied with the applicable statutes of limitations through a properly pled complaint, and have exercised exceptional diligence – despite both Defendant's and judicial actions denying and delaying this information and identification – in compliance with the State policy behind Colo. Rev. Stat. § 13-80-103.

Defendant replies arguing first that Plaintiffs improperly present evidence outside of the pleadings, which should not be considered, particularly where the documents were neither attached to nor referenced in the Complaint and where the Defendant's jurisdictional challenge is a facial attack. Defendant next contends that Plaintiff failed to refute her entitlement to qualified immunity for the due process claim, to demonstrate waiver of governmental immunity for the state law claim and, alternatively, to show her state law claim was filed within the applicable statute of limitations.

Finally, Defendant seeks an award of attorney's fees pursuant to Colo. Rev. Stat. § 13-17-201 and 42 U.S.C. § 1988.

## LEGAL STANDARDS

Defendant contends this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and Plaintiffs fail to state claims for relief pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiffs in this case bear the burden of establishing that the Court has jurisdiction to hear their claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  *Holt*, 46 F.3d at 1002.

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). Defendant argues her motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Second Amended Complaint's factual allegations for its Rule 12(b)(1) analysis.

## II.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

Typically, "[w]hen a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

## I.     Rule 12(b)(1) Defense

Here, the Defendant's Rule 12(b)(1) argument is limited only to the *state* law claims. That is, Defendant contends she is entitled to absolute immunity from liability for Plaintiffs' wrongful discharge and survival claims pursuant to the CGIA. Notably, neither party makes clear whether Defendant is sued in both her individual and official capacities; this is important because "[u]nlike public entities, which have sovereign immunity from lawsuits, public employees have **qualified** immunity" (*Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 197 (Colo. App. 2012) (emphasis added)) and, thus, claims against them are analyzed pursuant to Rule 12(b)(6). *See Neal v. Davis*, 475 F. App'x 690, 692 (10th Cir. 2012) ("... qualified immunity is a defense on the merits, not a jurisdictional bar.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Therefore, only a claim against Defendant in her official capacity would be properly analyzed under Rule 12(b)(1).

As set forth below, the Court will decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims; however, even if the Court were to analyze these claims, the Court finds it would lack subject matter jurisdiction to hear any state law claims brought against Defendant in her official capacity.  Plaintiffs name Defendant in the Second Amended Complaint as sued "individually *and* as current or former employee or authorized agent of the City and County of Denver, Colorado, Denver Pretrial Services," and Denver Pretrial Services is identified in the "parties" section of the pleading.  *See* ¶ 3, docket #45 (emphasis added).  Therefore, to the extent the pleading may be construed as alleging claims against Defendant in her official capacity and, thus, against the City and County of Denver, sovereign immunity issues concern subject matter jurisdiction and are determined in accordance with Rule 12(b)(1).  *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000) (en banc) (citing *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997)).

Although Defendant neither acknowledges nor argues whether the Court may hear claims against her in her official capacity, the Tenth Circuit has stated that "[f]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

"[A] suit against a public official in her official capacity "is, in all respects other than name, to be treated as a suit against the [public] entity." *Churchill v. Univ. of Colo.*, 285 P.3d 986, 997 (Colo. 2012) (en banc).  Under the CGIA, "[a] public entity shall be immune from liability in all claims for injury which lie or could lie in tort ... except as provided otherwise in this section." *Gray*,

284 P.3d at 196 (quoting Colo. Rev. Stat. 24-10-106(1)).  Plaintiff contends "the defendant does not have sovereign immunity under Colorado law for the willful and wanton acts or omissions causing injury per C.R.S. § 24-10-118(1)."  Response, docket #45 at 2.  However, "the CGIA does not provide for the waiver of the sovereign immunity of public entities from suit based either on their own willful and wanton acts or omissions, or their employees' willful and wanton acts or omissions."  *Gray*, 284 P.3d at 196.  Accordingly, to the extent the operative pleading may be construed as raising state law claims against Defendant in her official capacity and because sovereign immunity has not been waived, Defendant in her official capacity is immune from liability for the Plaintiffs' wrongful death and survival claims brought under Colorado law,[4] and the Court will dismiss such claims.

## II.      Rule 12(b)(6) Defenses

### A.      Federal Claims

Plaintiffs allege the Decedent was "untimely deprived of life and due process of law under the Colorado State and Federal Constitutions as a result of the actions of the defendant"[5] in that Defendant "acted affirmatively and/or with a deliberate indifference to create an unnecessary and

---

[4]Although Defendant does not raise the defense for the Second Amended Complaint, the Court notes that it previously dismissed Plaintiffs' *federal* Section 1983 official-capacity claims alleged in the First Amended Complaint under the same or similar facts (*see* docket #24) and, thus, the Court does not construe the Second Amended Complaint to allege Plaintiffs' constitutional claims against Defendant in her official capacity.

[5]It appears that both federal and Colorado courts have analyzed due process claims alleged under the federal and Colorado constitutions under the same legal standards.  *See, e.g., Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1172-73 (10th Cir. 1981); *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 214-15 (1984) (en banc); *Coalition for Equal Rights, Inc. v. Owens*, 458 F. Supp. 2d 1251, 1262 (D. Colo. 2006) ("The Colorado Constitution similarly protects fundamental rights under its due process guarantees.") (citing *People v. Strean*, 74 P.3d 387, 394 (Colo. App. 2002)).

serious danger to the DECEDENT," and Defendant "has a special relationship with the public she was charged to protect or attempt to protect from Mackey, which included the DECEDENT." Second Amended Complaint, ¶¶ 56, 57, 63.

Defendant asserts she is entitled to qualified immunity from the Plaintiffs' due process claims. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)). The

Supreme Court *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, Defendant contends Plaintiffs fail to state plausible substantive due process claims; accordingly, the Court will begin with an analysis of whether Plaintiffs' allegations state violations of the due process clauses of the state and federal constitutions.

Although not clearly expressed in the operative pleading, the Court agrees with Defendant that Plaintiffs allege substantive due process claims against her. The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1.

Generally, "[t]o show a deprivation of a protected interest ... in violation of substantive due process protection, a plaintiff must demonstrate that the government officials acted in a manner 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Deray v. City of Colo. Springs, Colo.*, No. 11-cv-02639-MSK-CBS, 2012 WL 1901220, at *6 (D. Colo. May 25, 2012) (quoting *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009)). "'The 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges.'" *Id.* (quoting *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006)). "To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience

shocking." *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957-58 (10th Cir. 2001) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)).

The Fourteenth Amendment does not "impose an affirmative obligation on the State to ensure that" its citizens are not deprived of life, liberty, or property without "due process of law." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, the state does have an affirmative duty to protect these interests when it "restrain[s] the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* at 200. Based on this exception, a state may have an affirmative duty towards a citizen under either the "special relationship doctrine" or the "danger creation" theory. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995); *see also DeShaney*, 489 U.S. at 199-200 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").

Although the Plaintiffs allege Defendant had a "special relationship" with the public including the Decedent (¶ 57), the Court finds the "special relationship" theory does not apply here. "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Uhlrig*, 64 F.3d at 572. "If the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a 'special relationship' during such restraint to protect that individual from violent acts inflicted by others." *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998). Thus, the special relationship doctrine is only applicable in cases where the private plaintiff has a "special relationship," such as incarceration, with the state or state actor. *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (holding the

state was not responsible under either a danger creation theory or under the special relationship with its employee when he was injured by a fellow police officer); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) ("Under the 'special relationship' exception, liability may attach to a state actor for the violence of a third party if the state restrained the plaintiff's personal liberty and that restraint hindered the plaintiff's freedom to act to protect himself from the third party") (citing *Armijo*, 159 F.3d at 1261). Here, the it is undisputed that the Plaintiffs were neither incarcerated nor under the control of the state at the time of the injury.

However, Plaintiffs summarily reject *DeShaney* and its progeny as "not instructive" and, citing Colorado cases, they argue that a "special relationship" existed between Defendant and **Mackey** (rather than the public or Decedent, as alleged in the operative pleading) sufficient to support their due process claims. Response, docket #45 at 26. The cited cases – *Whitcomb v. Denver*, 731 P.2d 749, 751 (Colo. App. 1986) and *Leake v. Cain*, 720 P.2d 152 (Colo. 1986) – articulate the "special relation rule" applied in analyzing negligence claims brought under Colorado law; Plaintiffs cite nothing demonstrating that the "special relation rule" created by Colorado common law has been applied to analyze constitutional due process claims. Accordingly, the Court concludes the "special relationship doctrine" enunciated in *DeShaney* and its progeny does not apply in this case. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 923 (10th Cir. 2012) ("The [special relationship] exception applies only in the presence of a custodial relationship between the victim and the State.").

Plaintiffs' allegations also may be construed as invoking the "danger creation" theory. After summarizing and interpreting its previous decisions concerning this theory, the Tenth Circuit recently concluded that "[t]he state-created danger theory is a means by which a state actor might

15

be held liable for an act of private violence absent a custodial relationship between the victim and the State, under narrowly prescribed circumstances bearing upon conduct, causation, and state of mind, *provided* the danger the state actor created, or rendered the victim more vulnerable to, precipitated a deprivation of life, liberty, or property in the constitutional sense." *Gray*, 672 F.3d at 922. In coming to this conclusion, the court emphasized the "preconditions" to stating such claim – private violence and affirmative conduct on the part of the state actor – and restated the six-factor test necessary to establish liability: "(1) plaintiff was a member of a limited and specifically definable group; (2) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (3) the risk was obvious or known; (4) defendant acted recklessly in conscious disregard of that risk; ... (5) such conduct when viewed in total, is conscience shocking[;] and 6) defendant ... created the danger or increased the plaintiff's vulnerability to the danger in some way." *Id.* at 920; *see also Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1251 (10th Cir. 2008).

Plaintiffs allege generally that Defendant "acted affirmatively and/or with a [sic] deliberate indifference to create an unnecessary and serious danger to the DECEDENT" (Second Amended Complaint, ¶ 56) and allege specifically that Defendant "through her failure to diligently enforce court-ordered terms and conditions, and/or follow policies, customs, protocols, procedures, and training by Denver Pretrial Services, allowed Mackey the opportunity to commit at least two (2) criminal offenses while under the 'intensive' supervision of Denver Pretrial Services (November 25th and 26th 2013), the latter offense resulting in the murder of the DECEDENT" (*id.*, ¶ 47). In other words, Plaintiffs assert Defendant did not act to fulfill her duties of "intensive pretrial supervision" of Mackey including, "1) global position monitoring, 2) direct, constant contact and

supervision, 3) drug testing, 4) curfews, 4) [sic] home inspections for felons, gangs, drugs, and firearm possession, 5) employment and residential verification, 6) background checks, and other services." *Id.*, ¶ 36. Based on Tenth Circuit precedent, the Court finds these allegations insufficient to show the affirmative conduct necessary to state plausible due process claims.

For example, in *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999), the court cited the "strict standards ... for succeeding on a danger creation claim" and held the complaint did not sufficiently plead "affirmative acts" by the school principal who knew that the plaintiff's son had been previously sexually assaulted at the school and assured the plaintiff that the child would be "supervised at all times," but subsequently another assault occurred. *Id.* at 1239. Likewise, in *Ruiz v. McDonnell*, 299 F.3d 1173 (10th Cir. 2002), the court held the plaintiff, whose child was fatally abused at a licensed home daycare, failed to sufficiently allege affirmative conduct on the part of the defendant licensing authority for licensing the daycare provider who failed to meet state requirements for licensure. *Id.* at 1183. Moreover, the court held, "the conduct should be directed at a discrete plaintiff rather than the public at large." *Id.* (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3d Cir. 1995) (holding that the plaintiff, whose home was deliberately burned by a volunteer firefighter, could not maintain a § 1983 claim on the sole basis that the fire department failed to properly screen firefighter applicants because the department's conduct affected the public at large and was not directed at the plaintiff)).

Similarly, in *Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008), the court held that the plaintiffs, whose infant suffered fatal blunt force trauma to the head at a state-subsidized daycare, failed to sufficiently allege affirmative conduct by the state in continuing to license the daycare and in "lull[ing] [the plaintiffs] into a false sense of security about [their infant's] welfare," because the

"allegations of 'lulling' and 'doing nothing' do not give rise to a reasonable expectation of relief, given that *DeShaney* requires an affirmative act before imposing liability." *Id.* at 1252. Finally, in *Gray*, 672 F.3d at 925, the court held that the plaintiffs, family members of an epileptic patient who died from a seizure when he was left unattended at a state university hospital, failed to sufficiently allege affirmative conduct by the hospital officials who assured plaintiffs they would provide the plaintiff with uninterrupted monitoring. Citing *DeShaney* and *Sutton*, the court concluded, "There, like here, state actors were aware of the risk, expressly promised to eliminate the risk, and failed to do so, with no constitutional implications." *Id.*

With this background, the Court must conclude that Plaintiffs fail to allege plausible due process claims. Although the Plaintiffs couch Defendant's conduct as affirmative, it actually boils down to this: Defendant was tasked with and responsible for following a court order and the agency's policies and procedures, but failed to do so. Such conduct demonstrates the Plaintiffs' allegations are most like those in *Ruiz*, in which there were no assurances or promises made by the state actor to eliminate any risk. Moreover, *Ruiz* requires that a danger creation claim "should be directed at a discrete plaintiff" rather than the general public. 299 F.3d at 1183. This is so "because the act of establishing [agency] policies and customs does not pose a direct threat to any one particular individual but affects a broader populace" and, thus, "such act [is] too remote to establish the necessary causal link between the danger to the victim and the resulting harm." *Gray*, 672 F.3d at 926.

Accordingly, Plaintiffs' allegations that Defendant "through her failure to diligently enforce court-ordered terms and conditions, and/or follow policies, customs, protocols, procedures, and training by Denver Pretrial Services, allowed Mackey the opportunity to commit at least two (2)

18

criminal offenses while under the 'intensive' supervision of Denver Pretrial Services (November 25th and 26th 2013), the latter offense resulting in the murder of the DECEDENT" are insufficient to state plausible due process claims, and the Defendant is entitled to qualified immunity from such claims.

B.     State Claims

As set forth above, this case was originally filed in, then removed from, the District Court for Denver County, Colorado based on the presence of the alleged federal claims. *See* docket #1. Now that the federal claims have been dismissed, the Court must determine whether to exercise supplemental jurisdiction over the alleged state claims.

28 U.S.C. § 1367(c) provides district courts with discretion regarding whether to maintain jurisdiction over supplemental claims:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2015).   The supplemental jurisdiction statute applies to cases removed to federal court. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).   "In cases removed on the basis of [a federal question], whether under section 1441(a) or section 1441(c), the district court may always exercise its discretion to retain the entire case or remand portions based upon the factors set forth in [*United Mine Workers v.*] *Gibbs* [383 U.S. 715 (1966)] and recently affirmed in *Carnegie-Mellon* [*Univ. v. Cohill*, 484 U.S. 343 (1988)]." *Westinghouse Credit Corp. v. Thompson*, 987 F.2d 682, 685 (10th Cir. 1993) (citation omitted).

"When all federal claims have been dismissed prior to trial, the court generally should

decline to exercise supplemental jurisdiction over pendant state claims." *211 Eighth, LLC v. Town of Carbondale*, 922 F. Supp. 2d 1174, 1185 (D. Colo. 2013) (citing *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).  Here, the Court finds it proper to decline to exercise jurisdiction over Plaintiffs' state claims where the case was originally filed in state court, the Plaintiffs' chosen forum; the only claims raising a federal question have been dismissed; the Court is "faced with purely state law claims over which it does not have diversity jurisdiction" (*McCulley v. Mink*, No. 09-cv-00563-PAB, 2009 WL 4730467, at *3 (D. Colo. Dec. 9, 2009)); the Court has not been involved in the adjudication of the state law claims to date; and such claims have not progressed in this Court due primarily to a stay of discovery (docket #44).  Moreover, Defendant's arguments as to the plausibility of Plaintiffs' alleged claims will require interpretation of Colorado statutes, Colo. Rev. Stat. § 24-10-105(1) and § 13-80-103, which are matters primarily determined by Colorado courts.

As the Supreme Court has opined, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice" or by "remand[ing] to state court a removed case." *Carnegie-Mellon*, 484 U.S. at 350, 357.  Therefore, the Court will remand Plaintiffs' state law claims against the Defendant in her individual capacity to the Denver County District Court where the case initiated.

## **CONCLUSION**

In sum, the Court finds that, to the extent the Second Amended Complaint may be construed as raising state law claims against Defendant in her official capacity, Defendant is immune pursuant to the CGIA from liability for such claims.  In addition, the Court concludes the Plaintiffs have failed to state plausible claims against Defendant pursuant to 42 U.S.C. § 1983.  Further, because the claims on which removal was based have been dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendant in her individual capacity.

Accordingly, based upon the foregoing reasons and the record herein, the Defendant's Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed November 6, 2015; docket #36] is **granted in part** and the remaining claims are **remanded** as follows.  Plaintiffs' official-capacity state law claims and due process claims are **dismissed** against Defendant. Plaintiffs' remaining wrongful death and survival claims against Defendant in her individual capacity are **remanded** to the District Court for Denver County, Colorado where Plaintiffs initiated case number 2014CV34470.

ORDERED AND DATED at Denver, Colorado this 11th day of January, 2016.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge